UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| PAIGE POOLE, | Case No. 2:12-cv-00647-APG-VCF |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| CENTENNIAL IMPORTS, INC., d/b/a CENTENNIAL MAZDA, | (Dkt. No. 30) |
| Defendant. | |

I. **BACKGROUND**

On or about March 8, 2011, Centennial Imports, Inc. ("Centennial") hired Paige Poole as a Sales/Internet Consultant.[1] On or about June 30, 2011, Centennial promoted Poole to Internet Sales Manager (also called Internet BDC Manager or BDC Manager). On July 25, Centennial's human resources consultant, AdvanStaff HR, sent a letter to Poole informing him that it had received his request for a medical leave of absence and that, "[i]n accordance with the Employee Handbook, you are entitled to take an unpaid leave of absence with the approval of both the General Manager and Executive Management."[2] The letter stated that Poole may be required to provide medical documentation of his reason for leave, the date that leave would begin, and the expected duration of the disability.[3]

On September 19, 2011, Poole informed Jan Sheinfeld, Centennial's General Manager, that Poole would undergo knee surgery in two days. In response, Sheinfeld discharged Poole and

---

[1] Before taking this job, Poole had undergone two knee surgeries. The parties dispute if and when Poole informed Centennial about the prior surgeries and about his potential need for a third knee surgery.

[2] (Dkt. No. 33-2 at 42.)

[3] (*Id.*)

told him that he could return if he provided a doctor's note releasing him to work.[4] On September 21, 2011, Poole had knee surgery. On October 6, he filed a charge of disability discrimination with the Equal Opportunity Employment Commission ("EEOC"). The EEOC issued a right-to-sue letter to Poole on January 20, 2012.[5]

On April 17, 2012, Poole filed his Complaint in this case, claiming that Centennial violated the Americans with Disabilities Act by firing him because of the alleged disability resulting from his third knee surgery without affording him a reasonable accommodation.[6] Centennial has moved for summary judgment.[7]

## II. ANALYSIS

### A. Legal Standard — Summary Judgment, Fed. R. Civ. P. 56

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] Material facts are those that may affect the outcome of the case.[9] A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.[10] "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict

---

[4] There is a factual question as to whether Poole was demoted from Internet Sales Manager back to a Sales/Internet Consultant before he informed Sheinfeld of the upcoming surgery. In its Answer, Centennial asserts that Poole was demoted on September 5,[4] and Centennial argues in its Motion for Summary Judgment that, as of September 19, it "had decided to replace [Poole] with [a] different person to be the BDC Manager."[4] In any event, whether and when Poole was demoted is irrelevant to this Order.

[5] (Dkt. No. 1 at 7.)

[6] (Dkt. No. 1.)

[7] (Dkt. No. 30.)

[8] Fed. R. Civ. P. 56(a).

[9] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[10] See id.

in the nonmoving party's favor."[11] A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."[12]

In determining summary judgment, courts apply a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."[13] In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.[14] If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.[15]

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish either that a genuine issue of material fact exists or that the moving party is not entitled to judgment as a matter of law.[16] To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[17] In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual

---

[11] *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[13] *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

[14] *See Celotex*, 477 U.S. at 323–24.

[15] *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

[16] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[17] *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

data.[18] Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts supported by competent evidence that shows a genuine issue for trial.[19]

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.[20] The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor."[21] But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted.[22]

### B. The Americans with Disabilities Act

The ADA provides that "[n]o covered entity[23] shall discriminate against a qualified individual with a disability because of the disability[.]"[24] To establish a prima facie case under the ADA, Poole must demonstrate that "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of his job with [or without] reasonable accommodation; and (3) he suffered an adverse employment action because of his disability."[25]

#### 1. "Disability"

Under the ADA, "the term 'disability' means . . . (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ."[26] "The definition of

---

[18] See *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[19] See *Celotex*, 477 U.S. at 324.

[20] See *Anderson*, 477 U.S. at 249.

[21] *Id.* at 255.

[22] See *id.* at 249–50.

[23] Centennial does not argue that it is *not* a covered entity.

[24] 42 U.S.C. § 12112(a).

[25] *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003).

[26] 42 U.S.C. § 12102(1).

disability . . . shall be construed in favor of broad coverage of individuals . . . , to the maximum extent permitted by the terms of [the ADA]."[27]

### a. Physical Impairment that Substantially Limits One or More Major Life Activities

A physical impairment is "any physiological disorder or condition . . . affecting one or more body systems . . . , such as . . . musculoskeletal."[28] Knee pain qualifies as a physical impairment.[29]

"The term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008."[30] The EEOC regulations reinforce this notion: "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. *'Substantially limits' is not meant to be a demanding standard.*"[31]

Whether an impairment is substantially limiting is measured by assessing "the ability of an individual to perform a major life activity as compared to most people in the general population."[32]

> [I]n determining whether an individual is substantially limited in a major life activity, it may be useful ... to consider, as compared to most people in the general population, the *condition* under which the individual performs the major life activity; the *manner* in which the individual performs the major life activity; and/or the *duration* of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity. . . .
>
> Consideration of facts such as *condition, manner,* or *duration* may include, among other things, consideration of the difficulty, effort, or time required to perform a

---

[27] *Id.* § 12102(4)(A).

[28] 29 C.F.R. § 1630.2(h)(1).

[29] *See Price v. City of N.Y.*, 797 F. Supp. 2d 219, 232 (E.D.N.Y. 2011); *Dvorak v. Clean Water Servs.*, 432 F. Supp. 2d 1090, 1109 (D. Or. 2006), *reversed on other grounds*, 319 F. App'x 538 (9th Cir. 2009); 2 AMERICANS WITH DISABILITIES: PRACTICE & COMPLIANCE MANUAL § 7:85 (2014).

[30] 42 U.S.C. § 12102(4)(B).

[31] 29 C.F.R. § 1630.2(j)(1)(i) (emphasis added).

[32] *Id.* § 1630.2(j)(1)(ii).

major life activity; pain experienced when performing a major life activity; [and] the length of time a major life activity can be performed[.][33]

Clearly then, "[t]he determination of whether an impairment substantially limits a major life activity requires an individualized assessment."[34] However, "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis" because "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity."[35]

"To be a major life activity, the activity need not be essential to survival, but rather of central importance to most people's daily lives."[36] "[M]ajor life activities include, but are not limited to . . . performing manual tasks, walking, standing, lifting, bending . . . , concentrating, thinking, communicating, and working."[37] A physical impairment need not substantially limit more than one major life activity to qualify as a disability—one is sufficient.[38] If a plaintiff asserts that working is the only major life activity that is substantially limited, she "must prove that the employer regarded [her] as precluded from a 'class of jobs or a broad range of jobs in various classes,'" not just the job that she had or the jobs available from that particular employer.[39]

In its Motion for Summary Judgment, Centennial conclusorily argues, without any record citations, that Poole "admits he is not 'disabled' because he does not have a physical or mental

---

[33] *Id.* § 1630.2(j)(4)(i), (ii) (emphasis added).

[34] *Id.* § 1630.2(j)(1)(iv).

[35] *Id.* § 1630.2(j)(1)(iii).

[36] *Head v. Glacier Nw. Inc.*, 413 F.3d 1053, 1061-62 (9th Cir. 2005) (internal quotation marks and citation omitted).

[37] 42 U.S.C. § 12102(2).

[38] *Id.* § 12102(4)(C).

[39] *Eisenberg v. Permanente Med. Group*, 855 F. Supp. 2d 1002, 1012–13 (N.D. Cal. 2012) (quoting *Sutton v. United Air Lines*, 527 U.S 471, 492 (1999)).

impairment that substantially limits one or more of his major life activities."[40] This contention is insufficient to shift the burden to Poole to provide admissible evidence to establish that his alleged disability substantially affects a major life activity.[41] Centennial raises a host of other arguments in its Reply brief as to this definition of disability, but I decline to address them because "[a] party may not raise an argument for the first time in its reply brief."[42]

### b. Record of an Impairment

Centennial contends that Poole cannot establish a record of disability. Poole's two prior surgeries indicate some level of past impairment, but there is no indication that Poole's past impairment substantially limited any of his major life activities. However, Poole does not rely on this definition of disability to establish his prima facie case. That Poole seemingly has no record of an impairment is thus irrelevant to whether his claim survives summary judgment.

### c. Regarded as Having an Impairment

The "regarded as" definition of disability does not require that the "impairment limits or is perceived to limit a major life activity."[43] A plaintiff need only establish that she was subjected to a prohibited action "because of an actual or perceived physical or mental impairment."[44] "In short, to qualify for coverage under the 'regarded as' prong, an individual is not subject to any functional test."[45] In addition, an individual who is disabled under only the "regarded as" definition is not entitled to reasonable accommodation.[46] This makes sense because a person who is only perceived to be disabled, but not actually disabled, would not need any accommodation to enable her to fulfill her job duties.

---

[40] (Dkt. No. 30 at 11.)

[41] *See Celotex*, 477 U.S. at 323–24; *Adickes*, 398 U.S. at 159–60.

[42] *Halo Elec., Inc. v. Pulse Eng'g, Inc.*, 810 F. Supp. 2d 1173, 1210 (D. Nev. 2011) (citing *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010)).

[43] 42 U.S.C. § 12102(3)(A).

[44] *Id.*

[45] 29 C.F.R. Pt. 1630, App., Section 1630.2(l).

[46] 42 U.S.C. § 12201(h).

This seeming advantage for plaintiffs is somewhat softened, however, because employers can defend a charge of discrimination under the "regarded as" prong by showing that the impairment is both transitory and minor, as objectively determined.[47] "A transitory impairment is an impairment with an actual or expected duration of [six] months or less."[48]

In its Motion for Summary Judgment, Centennial argues that it could not have regarded Poole as impaired because (i) knee surgery with mobility restrictions lasting less than six months is not an impairment, as a matter of law; and (ii) before having the surgery, Poole told Centennial that he would be gone from work for "a week tops" following the surgery.[49]

For its first proposition, Centennial relies on a Ninth Circuit case which was decided before Congress passed the ADA Amendments Act of 2008.[50] In that case, the court held that the plaintiff's "temporary psychological impairment," which lasted four months and had no long-term effects, "was not of sufficient duration to fall within the protections of the ADA as a disability."[51] The court relied on case law from district courts outside of the Ninth Circuit which had reached similar conclusions, and, importantly, on the Appendix to the ADA regulations. Before the ADA Amendments Act of 2008, the Appendix provided: "'temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities. Such impairments may include, but are not limited to, broken limbs, sprained joints, concussions, appendicitis, and influenza.'"[52] That language has since been removed from the Appendix, however, thereby rendering *Sanders*'s continued vitality doubtful.[53] Also, the ADA Amendments Act of 2008 explicitly sought to broaden the scope of what is considered a

---

[47] 42 U.S.C. § 12102(3)(B); *see* 2 AMERICANS WITH DISABILITIES: PRACTICE & COMPLIANCE MANUAL § 7:76.

[48] *Id.*

[49] Again, Centennial raises myriad other arguments as to this definition of disability in its Reply brief, which I decline to address.

[50] *Sanders v. Arneson Prods., Inc.* 91 F.3d 1351 (9th Cir. 1996).

[51] *Id.* at 1354.

[52] *Id.* (quoting 29 CFR Part 1630 App., § 1630.2(j) (1996)).

[53] *See* 29 CFR Part 1630, App.

disability.[54] Finally, *Sanders* examined the first definition of disability—whether the plaintiff's condition substantially limited a major life activity—rather than whether the defendant regarded the plaintiff as impaired. To the extent Centennial is arguing that Poole's alleged disability was transitory and minor, that is a question of fact for the jury.

As to Centennial's second argument, Centennial offers no record citations to support its assertion that Poole admitted that he told Centennial that he would be out for only "a week tops."[55] Nor does the Reply brief provide a citation for Poole's alleged admission.[56] Centennial's unsupported allegation is insufficient to shift the burden to Poole to establish that Centennial regarded him as disabled.[57] Even if Poole had said that he would be back in "a week tops," however, a reasonable jury might conclude that Sheinfeld did not believe Poole's assessment of his own injury and fired Poole because Sheinfeld regarded him as impaired.

### 2. Qualified Individual

The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[58] Here, the analysis of this element is subsumed within the following analysis of the adverse actions which Poole allegedly suffered.

### 3. Adverse Action Because of Disability

Adverse actions for purposes of the ADA include termination and the failure to provide a reasonable accommodation.[59] There is no doubt that Centennial terminated Poole's employment, although whether Centennial did it because of Poole's alleged disability is a question of fact for

---

[54] 42 U.S.C. § 12102(4)(A).

[55] (*See* Dkt. No. 30 at 11–12.)

[56] (*See* Dkt. No. 35 at 11.)

[57] *See Celotex*, 477 U.S. at 323–24; *Adickes*, 398 U.S. at 159–60.

[58] *Id.* § 12111(8).

[59] *See Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128, 1139 (9th Cir. 2001); *U.S. Equal Employment Opportunity Comm'n v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110 (9th Cir. 2010).

the jury. Whether Centennial could have provided a reasonable accommodation without facing undue hardship is also a question of fact for the jury.

An employer violates the ADA by "not making reasonable accommodations . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."[60] The Supreme Court has instructed that the terms "reasonable accommodation" and "undue hardship" shall be construed in a practical manner.[61] The employee has the burden of proof as to the reasonableness of an accommodation.[62] To successfully counter this proof, "the . . . employer . . . must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances."[63] In other words, undue hardship is an affirmative defense.

"'Undue hardship' refers to any accommodation that would be unduly costly, extensive, substantial, or disruptive, or that would fundamentally alter the nature or operation of the business."[64] "Ordinarily, whether an accommodation would pose an undue hardship on the employer is a factual question."[65]

"Once an employer becomes aware of the need for accommodation, that employer has a *mandatory* obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations."[66] "The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process."[67] If an

---

[60] 42 U.S.C. § 12112(b)(5)(A).

[61] *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002).

[62] *Id.*

[63] *Id.*

[64] 29 C.F.R. Pt. 1630, app. § 1630.2(p).

[65] *Humphrey*, 239 F.3d at 1139.

[66] *Id.* at 1137 (emphasis added).

[67] *Id.*

employer fails to engage in the interactive process in good faith, it "face[s] liability for the remedies imposed by the statute if a reasonable accommodation would have been possible."[68]

"A leave of absence for medical treatment may be a reasonable accommodation under the ADA."[69] "[W]here a leave of absence would reasonably accommodate an employee's disability and permit him, upon his return, to perform the essential functions of the job, that employee is otherwise qualified under the ADA."[70] "[T]he ADA does not require an employee to show that a leave of absence is certain or even likely to be successful to prove that it is a reasonable accommodation."[71] "'As long as a reasonable accommodation available to the employer could have plausibly enabled a handicapped employee to adequately perform his job, an employer is liable for failing to attempt that accommodation.'"[72]

"However, the ADA does not require an employer to permit an employee to take an indefinite, lengthy, unpaid leave of absence—i.e., if the employer does not know when the employee will be able to return to duty, the employer is not required to grant an indefinite and lengthy leave."[73] Likewise, both the Tenth Circuit and the Fourth Circuit have held that an indefinite leave of absence is not a reasonable accommodation.[74] Moreover,

> Reasonable accommodation does not require that an employer eliminate or reassign essential job functions. ... Nor does an employer have to alter fundamentally the nature of a job in order to accommodate a disabled employee. ... Likewise, an employer does not have to create a new position in order to accommodate reasonably a disabled employee.[75]

---

[68] *Id.* at 1137–38.

[69] *Id.* at 1135 (citing 29 C.F.R. Pt. 1630, app. § 1630.2(o)).

[70] *Id.* at 1135–36 (citing *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999)).

[71] *Id.* at 1136.

[72] *Id.* (quoting *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 879 (9th Cir. 1990)).

[73] *Norris v. Allied-Sysco Food Servs., Inc.*, 948 F. Supp. 1418, 1438–39 (N.D. Cal. 1996), *aff'd sub nom. Norris v. Sysco Corp.*, 191 F.3d 1043 (9th Cir. 1999).

[74] *Hudson v. MCI Telecomm'ns Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996); *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).

[75] *Barnett v. U.S. Air, Inc.*, 157 F.3d 744, 751 (9th Cir. 1998), *amended and superseded*, 196 F.3d 979 (9th Cir. 1998), *reh'g en banc granted, opinion vacated on other grounds*, 201 F.3d 1256 (9th Cir. 2000), *and on reh'g en banc*, 228 F.3d 1105 (9th Cir. 2000), *vacated on other grounds sub nom. U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).

It follows that "an employer need not create a new part-time position to accommodate a disabled employee."[76]

In its Motion for Summary Judgment, Centennial argues that Poole was not a "qualified individual" because (i) Poole "admits he was unable to perform a sales person's job responsibilities for a minimum of six (6) weeks after the 2011 surgery due to recovering from the surgery";[77] (ii) Poole "also admits he was not qualified for alternative jobs, even if they were available, in order for Centennial to offer a reasonable accommodation";[78] (iii) Poole was qualified to be only a salesperson at the time he was terminated, and he admits he could not perform that job for six weeks after the surgery; (iv) even if he were qualified for the BDC Manager position, he was unable to return to this position "until a week or more after the surgery";[79] and (v) Centennial would allow Poole to return to work only if he provided a doctor's note, and Poole never pursued this option.[80]

Poole admits that he could not perform any job, other than talking on the phone while lying prone with his leg elevated, for three months after the surgery. He could not return to a sales job for at least three months, and possibly six months. Even a sit-down job, such as the Internet Sales Manager position, would have required at least three months' recovery. This could have placed Centennial in the potentially difficult position of granting an indefinite leave of absence to Poole. But Centennial's failure to engage in the mandatory interactive process with Poole renders it impossible to assess the reasonableness of Poole's desired medical leave of absence.[81]

Poole sufficiently alleges in the Complaint that Centennial failed to engage in the interactive process to examine possible accommodations, and Centennial does not oppose this

---

[76] *Moore v. Computer Assocs. Int'l, Inc.*, 653 F. Supp. 2d 955, 965 (D. Ariz. 2009).

[77] (Dkt. No. 30 at 12.)

[78] (*Id.*)

[79] (*Id.* at 13.)

[80] I disregard the arguments made for the first time in Centennial's Reply brief as to this issue.

[81] *See Humphrey*, 239 F.3d at 1137–38.

allegation in the Motion for Summary Judgment. Whether Centennial satisfied the statutory requirement of an interactive process is a question of fact for the jury. Questions of fact also remain as to whether Poole was a "qualified individual"—whether he could have performed the essential functions of a sales person (or another position for which he was otherwise qualified at Centennial) with the accommodation of a medical leave of absence, whether that accommodation would have been reasonable, and whether it would have posed an undue hardship on Centennial.[82] Thus, summary judgment is not warranted.

### III. CONCLUSION

For the reasons set forth above, Centennial's Motion for Summary Judgment is DENIED.

DATED this 19th day of May, 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[82] *See id.* at 1139.